5IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| PATRICIA EAST, | * | |
| | * | |
| Claimant, | * | |
| | * | |
| vs. | * | CASE NO.  5:04-CV-382 (WDO) |
| | * | |
| JO ANNE B. BARNHART, | * | |
| COMMISSIONER OF | * | |
| SOCIAL SECURITY, | * | |
| | * | |
| Defendant. | * | SOCIAL SECURITY APPEAL |
| _____ | * | |

**REPORT AND RECOMMENDATION**

The Social Security Commissioner, by adoption of the Administrative Law Judge's determination, denied Claimant's application for social security disability benefits, finding that she was not disabled within the meaning of the Social Security Act and Regulations. Claimant contends that the Commissioner's decision was in error, and she seeks review under the relevant provisions of 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). All administrative remedies have been exhausted.

**LEGAL STANDARDS**

The court's review of the Commissioner's decision is limited to a determination of whether it is supported by substantial evidence and whether the correct legal standards were applied. *Walker v. Bowen*, 826 F.2d 996 (11th Cir. 1987). Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court may not decide facts, reweigh evidence, nor substitute its judgment for that of the Commissioner.[1] *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). It must, however, decide if the Commissioner applied the proper standards in reaching a decision. *Harrell v. Harris*, 610 F.2d 355, 359 (5th Cir. 1980). The court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings. *Bloodsworth v. Heckler*, 703 F.2d at 1239. However, even if the evidence preponderates against the Commissioner's decision, it must be affirmed if substantial evidence supports it. *Id.* The initial burden of establishing disability is on the claimant. *Kirkland v. Weinberger*, 480 F.2d 46 (5th Cir. 1973). The claimant's burden is a heavy one and is so stringent that it has been described as bordering on the unrealistic. *Oldham v. Schweiker*, 660 F.2d 1078 (5th Cir. 1981).

A claimant seeking Social Security disability benefits must demonstrate that she suffers from an impairment that prevents her from engaging in any substantial gainful activity for a twelve-month period. 42 U.S.C. § 423(d)(1). In addition to meeting the requirements of these statutes, in order to be eligible for disability payments, a claimant must meet the requirements of the Commissioner's regulations promulgated pursuant to the authority given

---

[1] Credibility determinations are left to the Commissioner and not to the courts. *Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991). It is also up to the Commissioner and not to the courts to resolve conflicts in the evidence. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). See also *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986).

in the Social Security Act. 20 C.F.R. § 404.1 et seq.

Under the regulations, the Commissioner determines if a claimant is disabled by a five-step procedure. 20 C.F.R. § 404.1520, Appendix 1, Part 404. First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Next, the Commissioner determines whether the claimant's impairment(s) meets or equals an impairment listed in Appendix 1 of Part 404 of the regulations. Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work. Finally, the Commissioner determines whether the claimant's residual functional capacity, age, education, and past work experience prevent the performance of any other work. In arriving at a decision, the Commissioner must consider the combined effect of all the alleged impairments, without regard to whether each, if considered separately, would be disabling. *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984). The Commissioner's failure to apply correct legal standards to the evidence is grounds for reversal. *Id.*

### ISSUES

I. **Whether the ALJ erred in failing to properly evaluate the Claimant's mental impairments?**

II. **Whether the ALJ erred in failing to properly evaluate the Claimant's back impairment?**

## DISCUSSION

**Administrative Proceedings**

Claimant filed an application for social security disability benefits on November 5, 2001. (Claimant's Brief, p. 2). Her application was denied initially and upon reconsideration. The Claimant then requested a hearing in front of an administrative law judge (ALJ) which was held on April 9, 2004. (R- 542-583). Subsequent to the hearing, the ALJ found that the Claimant was not disabled in a decision dated May 24, 2004. (R- 15-24). Claimant requested review of the ALJ's finding by the Appeals Council on July 20, 2004. The Appeals Council thereafter denied review, making the ALJ's decision the final decision of the Commissioner.

**Statement of Facts and Evidence**

The Claimant's application for disability benefits alleged that she could not work due to bi-polar disorder, a learning disability, depression, suicide attempts, asthma, seizures and back surgeries. (R- 70). In her decision, the ALJ found that Claimant had severe impairments consisting of degenerative disc disease of the lumbar spine, asthma and bi-polar disorder. (R- 17). The ALJ found, however, that those impairments, either alone or in combination, did not meet or equal any of the relevant Listings. *Id.* The ALJ then found that Claimant retained the residual functional capacity to perform simple light work. (R- 21). Finding that Claimant could not return to past relevant work, the ALJ looked to a vocational expert to testify as to whether or not there were a significant number of jobs in the national economy that this Claimant could perform given her age, education, past relevant work and

residual functional capacity. (R- 22). Based on that testimony, the ALJ found that Claimant could adjust to other work which exists in significant numbers in the national economy. (R- 22,23).

I. **Did the ALJ err in failing to properly evaluate a claimed mental impairment?**

In her Brief, the Claimant enumerates several allegations of error made by the ALJ regarding her mental impairment. She argues that the ALJ failed to properly evaluate her borderline personality disorder, failed to assess the report of the consultative examiner, failed to evaluate the report of her mother, improperly rejected the opinion of her treating psychiatrist and failed to properly evaluate her credibility regarding her mental impairment. (Claimant's Brief, p. 12-16).

  A. **Evaluation of Borderline Personality Disorder claim.**

In the first of Claimant's numerous claims of error, she argues that the ALJ failed to evaluate her Borderline Personality Disorder. Within this enumeration of error, the Claimant contends that the ALJ failed to find that her Borderline Personality Disorder was a severe impairment, failed to consider her Borderline Personality Disorder in combination with her other impairments and failed to evaluate her Borderline Personality Disorder under the proper Listing, along with "other related errors" as listed in her Brief. (Claimant's Brief, p. 12-14).

The Claimant contends that she was diagnosed with a personality disorder which was, at some point, deemed Borderline Personality Disorder. *Id.* In support of her overall claim regarding borderline personality disorder, the Claimant cites *Vega v. Commissioner of Social*

5

*Security,* a 2001 Eleventh Circuit Court of Appeals decision, which held:

> We agree with the reasoning of our sister circuits, as well as our prior case law, holding that remands are required when an ALJ fails to consider properly a Claimant's condition despite evidence in the record of the diagnosis. *See, Marbury v. Sullivan,* 957 F.2d 837, 839-40 (11th Cir. 1992).

*Vega v. Commissioner of Social Security,* 265 F.3d 1214, 1219 (11th Cir. 2001). In *Vega,* the issue relevant to the case *sub judice* was whether or not the Commissioner, by way of the ALJ, erred in failing to properly evaluate the claimant's chronic fatigue syndrome (CFS). *Id.* After the district court affirmed the ALJ's denial of her disability claim, the claimant appealed the decision to the Eleventh Circuit. Among other things, the claimant in *Vega* argued that the ALJ failed to make a finding that she suffered from CFS and failed to credit any of the limitations resulting therefrom. *Id.* at 1219. The Commissioner argued that medical references to fatigue or the Epstein-Barr virus in the claimant's medical notes did not constitute a diagnosis of CFS and that the claimant failed to provide objective medical evidence of any work related limitations which may have resulted from chronic fatigue syndrome. *Id.* The court disagreed and stated that the claimant was specifically diagnosed with CFS on seven different occasions and presented at a hospital suffering from sleepiness, fatigue and weakness. *Id.* Thus, the court held that the ALJ should have considered the claimant's CFS and its effect on her ability to work.

The facts in *Vega,* however, also reveal that the claimant listed CFS as one of her impairments in her original application for social security disability benefits. The facts further reveal that after being diagnosed with CFS, the claimant's physician submitted a form

which read that her chronic fatigue syndrome significantly limited her ability to walk, stand, lift and understand instructions. *Vega* at 1216.

Alternatively, in the case at issue, Claimant East did not claim "borderline personality disorder" as a disabling impairment when she applied for disability benefits with the Social Security Administration. The Claimant's application for benefits states that the impairments that affect her ability to work were bi-polar disorder, a learning disability, depression, suicide attempts, asthma, seizures and back surgeries. (R- 70). Furthermore, at the hearing on her claim, the only reference to any type of personality disorder occurred when the ALJ asked the Claimant if she had been diagnosed with depression, wherein she responded, stating "[Y]es ma'am, bipolar and she - - some - - the last one said personality disorder." (R- 555). Even in her appeal of the ALJ's findings to the Appeals Council, the Claimant failed to raise any claim of borderline personality disorder. (R- 538-541).

The Claimant argues that the she "was diagnosed with a personality disorder, which was eventually classified a Borderline Personality Disorder" and cited thirteen references, pages 140, 144, 146, 150, 152, 159, 192, 244, 305, 308, 310, 392 and 395 of the medical record to reference the diagnoses. (Claimant's Brief, p. 12). However, merely noting the existence of an impairment does not make it a condition the Commissioner must analyze. A review of the cited references reveals that the "personality disorder" references were almost exclusively initial assessments or historical references to the initial assessments.

As the Regulations state, the burden of proving that she is disabled is on the Claimant. *See,* 20 C.F.R. 416.912. That means that "[I]n an action seeking disability benefits, the

7

burden is upon the claimant to demonstrate existence of a disability as defined by the Social Security Act. *Brady v. Heckler,* 724, F.2d 914, 918 (11th Cir. 1984); *citing Fortenberry v. Harris,* 612 F.2d 947 (5th Cir.1980). It is, therefore, not the responsibility of the ALJ to analyze each and every impairment listed by the claimant in her medical records to determine if that impairment causes or contributes to a claimant's inability to work. It is the sole responsibility of the claimant to do so. To require that the ALJ address every impairment mentioned in a claimant's medical records to determine its severity would remove the burden from the Claimant and place it squarely on the shoulders of the Commissioner.

Because the facts in *Vega* are distinguishable from those in the case *sub judice*, remand of this case regarding the ALJ's failure to address the Claimant's personality disorder is not required. Thus, any alleged errors the Claimant contends occurred as a result should fail.

      **B.**      **Consultative Examiner's Report**

The Claimant next argues that the ALJ committed reversible error by failing to address the report of the consultative psychologist who evaluated the Claimant. (Claimant's Brief, p. 14). She claims that because the consultative psychologist, Dr. Priscilla Wilson, Ph.D., found that her "reliability is likely to be poor", that meant that the Claimant would be unable to work "'on a regular and continuing basis ... eight hours a day, for five days a week, or an equivalent work schedule' and so is disabled under Social Security Rulings 96-8p, 96-9p. The Commissioner responds by agreeing that Dr. Wilson found she had limitations relating to her ability to handle stress, focus and complete tasks and demonstrate reliability.

(Commissioner's Brief, p. 11). She argues, however, that the limitations found by Dr. Wilson were incorporated into the hypothetical question presented tot he vocational expert by the ALJ, and, thus, were accounted for in her ultimate findings that the Claimant is not disabled. *Id.* The Commissioner further argues that although the ALJ did err in failing to address the report, remand would serve no purpose as "no further findings could be made that would alter the ALJ's decision given the record as a whole." (Commissioner's Brief, p. 12).

In reviewing the record as a whole, it appears that the consultative examiner found that the Claimant would have an impaired ability to focus attention and complete tasks in a timely manner. (R- 244). Dr. Wilson further found that the Claimant would be able to carry out simple instructions, that her reliability would likely be poor, that she would not adapt easily to changes in duty or environment and would not be able to handle a great deal of stress. *Id.* Included in the hypothetical question asked of the vocational expert was a person who would be able to follow only simple instructions, maintain concentration for simple tasks only, would have limited pace and concentration, would be able to complete tasks by the end of the day or workweek, would need the same type of duties everyday, would require a stable work setting and would require limited contact with the public. (R- 579).

As to the limitations found by Dr. Wilson in her report, it appears that her opinions regarding the Claimant's psychological functional abilities were taken into account by the ALJ. Although the ALJ did not specifically mention Dr. Wilson's report in her decision, Dr. Wilson's opinions were applied to the hypothetical question asked of the vocational expert

9

in this case. Any error resulting from the ALJ's failure to cite the report in her analysis is harmless considering that the opinions expressed were incorporated into her ultimate findings. Thus, remand for the purpose of requiring the ALJ to address the report of Dr. Wilson would be fruitless and, therefore, is unwarranted.

      **C.**     **Report of Daily Activities by Claimant's Mother.**

The Claimant's next claim of error concerns what she argues was the ALJ's failure to credit the Daily Living Activities Questionnaire completed by her mother. (Claimant's Brief, p. 15). She contends that the ALJ committed reversible error by failing to make any findings as to the credibility of Claimant's mother's report and further claims that the report completed by the Claimant's mother would show that she met the second part of Listing 12.08. (Claimant's Reply Brief, p. 5).

In *Allen v. Schweiker,* 642 F.2d 799 (5th Cir.1981), the court was faced with a similar issue. In that case, the petitioner argued that the ALJ failed to make a finding of credibility as to the testimony of his former wife. *Allen*, 642 F.2d at 801. The court "specifically found that Allen's testimony, the primary evidence in support of his alleged disability, was not credible. No such finding, however, was made as to the testimony of Allen's former spouse. Nevertheless, the court found that the ALJ's credibility determination as to the spouse was clearly implied by the explicit ruling as to Allen's testimony." *Tieniber v. Heckler,* 720 F.2d 1251, 1254-5 (11th Cir. 1983); citing *Id.* at 801. Therefore, as stated by the Eleventh Circuit in *Tieniber*, "[A]lthough this circuit does not require an explicit finding as to credibility, as

*Allen* indicates, the implication must be obvious to the reviewing court." *Tieniber*, 720 F.2d at 1255.

Applying the holdings in both *Allen* and *Tieniber* to Claimant's case, then, it would follow that as long as the ALJ was clear in her assessment of the Claimant's credibility, no error resulted from her failure to acknowledge the Daily Activities Questionnaire completed by her mother. A review of the ALJ's decision reveals that she found the Claimant's allegations of pain and limited functional abilities not to be credible. (R- 20-21). The ALJ noted that there was no objective medical evidence to support her pain and functional limitation allegations. *Id.* The Daily Activities Questionnaire- Third Party, completed by Claimant's mother, makes essentially the same claims of pain and functional limitations as alleged by the Claimant. Because the ALJ found the Claimant's allegations to be implausible, it is obvious that the ALJ would also have found the allegations of Claimant's mother to be less than credible. Thus, pursuant to the rulings in *Allen* and *Tieniber*, no error resulted from the ALJ's failure to specifically mention the Mother's Report in her decision as her findings imply that she would have found that Report to be less than credible.

### D. Opinion of Claimant's Treating Psychiatrist

Claimant next argues that reversible error occurred when the ALJ rejected the opinion of Claimant's treating psychiatrist, Dr. Robert Hartmann. (Claimant's Brief, p. 16). At issue is a Medical Assessment of Ability to do Work-Related Activities (mental) form completed by Dr. Hartmann on November 25, 2003.

It is well settled that the opinion of a treating physician is entitled to substantial

11

weight unless good cause exists for not heeding it. *Broughton v. Heckler*, 776 F.2d 960, 961-62 (11th Cir. 1985). A treating physician's report may be discounted when it is not accompanied by objective medical evidence or when it is conclusory. *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). The ALJ can also reject the opinion of any physician when the evidence supports a contrary conclusion or when it is contrary to other statements or reports of the physician. *Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991). *See also Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984).

The record reveals that the Claimant was treated by Dr. Hartmann in 2003, seeing him nine times. (R- 365, 366, 376, 380, 382, 386, 388, 391, 393). In the Medical Assessment form completed by Dr. Hartmann, he found that Claimant would have poor to no ability to use judgement in a work environment. (R- 418). He further found that Claimant would have poor to no ability to deal with work stress or maintain attention and concentration. (R- 419). Lastly, Dr. Hartmann noted that Claimant would have poor to no ability to relate predictably in social situations. (R- 420). His treatment notes, as noted by the Commissioner, however, reveal that he repeatedly found her to have an appropriate affect, adequate self control and no signs of psychosis throughout his treatment of her. (R- 365, 366, 376, 382, 386). He further noted that she presented at her appointments with him as both alert and rational. *Id.* He noted that she stated that she improved when she took her medications, also noting that she doesn't always remember to take her Wellbutrin and cannot always afford her prescriptions. *Id.*

The record further reveals that a state agency consultative psychologist, Dr. Wilson, PhD., examined Claimant in January 2002. She found, as noted by Claimant in her Brief, that:

> From a psychological perspective, her ability to maintain focused attention and complete tasks in a timely manner is impaired. She should be able to understand and carry out simple instructions that fall within the parameters of her physical capabilities, but reliability is likely to be poor. Written reminders may be necessary to combat forgetfulness. She would not be able to adapt to frequent changes in responsibility or environment. Because of her depression, she would not be able to handle a high level of stress. She should be able to handle low to moderate stress.

The Claimant argues that the ALJ failed to follow 20 C.F.R. § 416.927(d) in rejecting Dr. Hartmann's opinion. (Claimant's Brief, p. 16, Claimant's Reply Brief, p. 8). She claims that the ALJ failed to consider that Dr. Hartmann's opinion was consistent with her diagnosis of Borderline Personality Disorder, with the Daily Activities Questionnaire completed by her mother, with the opinion of Dr. Wilson, and with her own testimony. (Claimant's reply Brief, p. 8). However, as has previously been determined, there existed no reason for the ALJ to analyze Claimant's recently claimed Borderline Personality Disorder. Furthermore, the ALJ found Claimant's testimony, and by implication her mother's testimony, to be less than credible. (R- 20, 21). Lastly, Dr. Wilson's opinion fails to rise to the level of functional limitation as was reported in the Medical Assessment of Ability to do Work-Related Activities (mental) form completed by Dr. Hartmann. As to Dr. Hartmann's treatment notes, they also do not reflect the level of limitation as was noted by him in the Medical

13

Assessment.

The Claimant also argues in her Reply Brief that the ALJ should have re-contacted Dr. Hartmann if she was unsatisfied with the information provided by him, pursuant to 20 C.F.R. § 416.912(e), SSR 96-5p and 96-2p. In this case, however, the ALJ was not unsatisfied with the medical evidence provided by Dr. Hartmann. She merely found that his assessment as to her mental ability to perform work was inconsistent with his treatment notes, and therefore, she rejected it based on his record of her treatment.

In sum, therefore, Claimant's contention that the ALJ erred in failing to credit the opinion of her treating psychiatrist must fail.

### E. Credibility of Claimant's Mental Impairment

The Claimant's next enumeration of error concerns what she calls a defective credibility finding made by the ALJ where the ALJ failed to perform a factual evaluation which is required by SSR 96-7p. Specifically, she contends that "the ALJ failed to realize the symptoms Plaintiff reported were supported by her diagnosis of Borderline Personality Disorder, by the consultative psychologist's opinion and by her mother; and failed to realize Dr. Hartmann's opinion (also supporting Plaintiff's report of symptoms) should have been credited."

Social Security Regulation 96-7p states, in relevant part, that:

> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by

> treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

Additionally, 20 C.F.R. § 416.929(a), in relevant part, states that:

> statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.

As to whether the evidence cited by Claimant supports a finding that her subjective allegations were credible, no evidence was submitted to the court which showed that Borderline Personality Disorder produced any functional limitations. The opinion of the consultative psychologist was not discounted by the ALJ, and was essentially included in her ultimate findings. The Daily Activities Report completed by Claimant's mother did nothing to lend credibility to Claimant's allegations. And lastly, the opinion of Dr. Hartmann was discussed *supra,* and was found to have been properly discounted by the ALJ. Therefore, there appears to be no error in the ALJ's finding as to the credibility of Claimant's mental complaints.

**II.      Did the ALJ err in failing to properly evaluate the Claimant's back impairment?**

The Claimant also contends that the ALJ committed reversible error concerning her analysis of Claimant's back impairment. Within this enumeration, the Claimant has alleged that the ALJ misunderstood her back impairment, improperly evaluated the opinion of her treating physician and improperly evaluated the credibility of her physical complaints. (Claimant's Brief, p. 17, 18).

**A.      Misunderstanding of Claimant's back impairment**

Claimant argues that reversal is required for evaluation by an ALJ who understands the extent of her back impairment. She contends that the ALJ, who found that she had degenerative disc disease of the lumbar spine, omitted that she had received a discectomy. (Claimant's Brief, p. 17). She cites pages 395 and 550 from the record to support her claim. A review of the cited record reveals that on page 550, the Claimant testified that she received two discectomys for her back pain. Page 395 is a record of a visit to the Oconee Center where it was reported that she presented, with among other various medical issues, that she had back surgery in 1999 for a ruptured disc and six months later fell and re-injured her back and is chronic pain.

Claimant also argues that the ALJ erroneously failed to mention in her decision that an MRI she received showed mild central canal stenosis due to disc bulging a L4-5 and L5-SI, with mild effacement of the thecal sac. (Claimant's Brief, p. 17). The MRI that Claimant's refers to is from records over four years prior to her alleged onset of disability date, and for which she had back surgery in 1999.

After a thorough review of the medical record and the ALJ's decision, it does not appear that the ALJ's failure to note the results of the 1996 MRI or the "history of discectomy" was erroneous. Furthermore, there exists no evidence to suggest that the ALJ misunderstood the extent of Claimant's back impairment. Therefore, Claimant's assertion that the case should be remanded for this reason should fail.

    **B.**    **Opinion of Claimant's Treating Physician**

Claimant next contends that the ALJ erroneously discounted the opinion of the physician who treated her back impairment. The record reveals that Dr. Alice House, M.D., completed a Physical Capacities Evaluation form on January 15, 2004. (R- 422-425). In the document, Dr. House found that Claimant possessed degenerative disc disease and fibromyalgia, which would preclude any full-time competitive work activity. (R- 425). Dr. House further found that Claimant's allegations of pain were greater than her findings and that her fibromyalgia had no known clinical findings. *Id.*

As was stated above, the law of this circuit is clear that the testimony of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary. The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error. "Good cause" is found to exist when the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. *Lewis v. Callahan*, 125 F.3d 1436 (11th Cir.1997) (omitting internal citations). In this case, the ALJ's opinion provided a thorough discussion of Claimant's medical history of record, testimony, and record as a whole. The ALJ set out

that he considered Dr. House's disability opinion, but that it conflicted with the medical evidence and record as a whole. (R- 18). Specifically, she found that the limitations attested to by Dr. House were "out of proportion to the objective medical findings." *Id.* As to Dr. House's diagnosis of fibromyalgia, the ALJ found that there was little evidence in Claimant's records to support such a diagnosis. (R- 17). The court agrees. Merely mentioning that a claimant has fibromyalgia without performing any tests to confirm such a diagnosis does not make it one that must be relied upon. Accordingly, the ALJ applied the appropriate legal standard in discounting the opinion of Dr. House, and her decision is supported by substantial evidence.

### C. Credibility of Physical Complaints

Lastly, Claimant contends that the ALJ erred in failing to find that her physical complaints were consistent with the medical evidence. (Claimant's Brief, p. 18). She argues that her history of central canal stenosis, thecal sac effacement and discectomy all support her complaints of pain. She also argues that the opinion of Dr. House, the testimony of her mother and her own testimony further support her allegations.

In order for a claimant's testimony about the pain she experienced to be taken into account, she must *first* show "evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Before reviewing the ALJ's credibility determination the court is

mindful that credibility determinations are left to the Commissioner and not to the courts. *Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991). It is also up to the Commissioner and not to the courts to resolve conflicts in the evidence. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). *See also, Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986). The ALJ explicitly found that the Claimant's subjective complaints of disabling pain and other symptoms were not credible.

The ALJ in this case found that Claimant had been evaluated by specialists and that all tests performed therein were negative. (R- 20). The ALJ further noted that Claimant's presentation was functional, that the consultative examiner found that she was likely faking her degree of pain, that her degenerative disc disease was mild and that no objective evidence supported her pain or limitational allegations. *Id.* The ALJ considered factors set out in 20 CFR 404.1529; 416.929 and Social Security Ruling 95-5(P). Factors considered included, "daily living activities, the location, duration, frequency and intensity of the pain or symptom, precipitating or aggravating causes, the type, dosage, effectiveness, and side-effects of any medication, and other factors concerning the functional limitations and restrictions due to pain or other symptoms." *Id*. The ALJ also considered the consistency of Claimant's complaints of pain with the record and Claimant's demeanor and factors bearing on her reasons for the subjective complaints. *Id*. After a thorough analysis of the record, the ALJ found that Claimant's subjective complaints were inconsistent with  with medical evidence in the record. (R- 20, 21).

It is the law of this Circuit that if the Secretary discredits a Claimant's testimony, "he

must articulate explicit and adequate reasons for doing so." *Hale v. Bowen,* 831 F.2d 1007, 1011 (11th Cir. 1987). If the Secretary fails to articulate the reasons for discrediting subjective pain testimony, such testimony is accepted as true. *Id*. at 1012. Here, the ALJ clearly and articulately explained her reasons for discrediting Claimant's subjective complaints of pain and, because she used the proper analysis for making that determination, her decision is supported by substantial evidence.

**WHEREFORE**, it is the recommendation to the United States District Judge that the decision of the Commissioner of Social Security be **AFFIRMED**.

Pursuant to 28 U.S.C. § 636(b)(1), Claimant may serve and file written objections to this recommendation with the UNITED STATES DISTRICT JUDGE within ten (10) days after being served a copy of this recommendation.

THIS the 31st day of October, 2005.

                                                S/ G. MALLON FAIRCLOTH
                                                UNITED STATES MAGISTRATE JUDGE

sWe